COURT OF APPEALS
DECISION
DATED AND FILED

June 19, 2024

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2023AP942**

**STATE OF WISCONSIN**

Cir. Ct. No. 2021CV176

**IN COURT OF APPEALS
DISTRICT II**

PINE HAVEN CHRISTIAN HOME, INC.,

   PLAINTIFF-RESPONDENT,

V.

VILLAGE OF OOSTBURG,

   DEFENDANT-APPELLANT.

APPEAL from a judgment of the circuit court for Sheboygan County: ANGELA W. SUTKIEWICZ, Judge. *Reversed and cause remanded with directions*.

Before Gundrum, P.J., Neubauer and Grogan, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. The Village of Oostburg appeals from a judgment entered after the circuit court granted summary judgment in favor of Pine Haven Christian Home, Inc. in regard to Pine Haven's lawsuit challenging its property tax assessment. The court concluded that the four duplexes Pine Haven purchased near Pine Haven's existing assisted living facility qualified "as a retirement home for the aged" under WIS. STAT. § 70.11(4d) (2021-22)[1] and are therefore entitled to exemption from property taxation. The Village asserts that the duplexes do not satisfy the definition of "retirement home for the aged" as defined in *Milwaukee Protestant Home for the Aged v. City of Milwaukee*, 41 Wis. 2d 284, 164 N.W.2d 289 (1969), and therefore do not meet the statutory requirement for tax exemption. The Village therefore requests that we reverse the grant of summary judgment in Pine Haven's favor and direct that summary judgment instead be granted in its favor. We reverse the judgment and remand with directions to grant summary judgment in the Village's favor.[2]

## I. BACKGROUND

¶2 It is undisputed that Pine Haven is a nonprofit entity that owns and operates housing facilities ranging from independent living facilities to long-term skilled nursing facilities. In 2019, Pine Haven purchased four duplexes located

---

[1] All references to the Wisconsin Statutes are to the 2021-22 version unless otherwise noted.

[2] Because a party seeking an exemption pursuant to WIS. STAT. § 70.11(4d) must establish all elements, it is unnecessary to address the Village's argument that Pine Haven has also failed to establish the statute's fair market value requirement in light of our conclusion that the duplexes at issue do not fall within the meaning of "retirement home for the aged[.]" *See, e.g.*, *State v. Lickes*, 2021 WI 60, ¶33 n.10, 397 Wis. 2d 586, 960 N.W.2d 855 ("Issues that are not dispositive need not be addressed." (quoted source omitted)); *Maryland Arms Ltd. P'ship v. Connell*, 2010 WI 64, ¶48, 326 Wis. 2d 300, 786 N.W.2d 15 ("[A]ppellate court[s] should decide cases on the narrowest possible grounds.").

south of its assisted living facility in Oostburg for the purpose of expanding the continuum of care its facilities offer. At the time, the duplexes were fully occupied, and the tenants thereafter entered new rental agreements with Pine Haven.[3]

¶3 Pine Haven submitted a Property Tax Exemption Request for the recently acquired duplexes seeking exemption from property taxes pursuant to WIS. STAT. § 70.11(4d) for the 2020 tax year. Although the Village assessor initially granted the request, he reversed that decision a day later on the basis that the duplexes did not qualify "as a retirement home for the aged" within the meaning of § 70.11(4d).[4] Pine Haven paid its tax bill and commenced this action to recover the "unlawful" tax and sought a declaration that the duplexes are exempt from taxation under the statute.

¶4 Both parties moved for summary judgment. Pine Haven argued that the duplexes fall within the definition of "retirement home for the aged," whereas the Village contended that they do not. After hearing oral argument, the circuit court granted summary judgment in Pine Haven's favor. The Village appeals.

---

[3] Although the rental agreement terms alone are not dispositive, we note that the rental agreements do not appear to reference Pine Haven's other properties or services or living options (aside from one specific rental agreement stating that "Tenant is considered to have a privileged access to the Pine Haven Continuum of Care"), describe the parties as having a landlord/tenant relationship, and do not contain an age requirement—despite Pine Haven's primary argument that the duplexes qualified for exemption, at least in part, because all of the tenants were at least 55 years old.

[4] Pine Haven alleged in its Complaint that it initially received a voice message from the Village's assessor indicating the Village would grant Pine Haven's requested exemption but that it then received a denial letter the following day. In its Answer, the Village agreed that its "[a]ssessor left a voice message for Pine Haven … regarding its exemption request" but otherwise denied that the Village had initially granted the exemption. On appeal, the Village maintains that it did not initially grant the exemption. While this point is not determinative, we note that in his deposition, the assessor testified that he had left "a voicemail … in regards to my opinion at the time of the exemption which I did say that I was granting the exemption at that time" but then reversed course after conferring with the Village's attorney.

## II. DISCUSSION

¶5      "'Summary judgment is appropriate when there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law.'" *Martinez v. Rullman*, 2023 WI App 30, ¶18, 408 Wis. 2d 503, 992 N.W.2d 853 (quoted sources omitted), *review denied*, 2024 WI 3, 4 N.W.3d 908.  "Appellate courts review a grant of summary judgment de novo using the same methodology as the circuit court."  *Id.*  "Summary judgment should be granted only when there are no genuine issues of disputed material facts."  *Id.*

¶6      The dispute here is whether Pine Haven's four duplexes located near one of its assisted living facilities qualify "as a retirement home for the aged" under WIS. STAT. § 70.11(4d) so as to exempt Pine Haven from paying property taxes for those properties.  We review questions of statutory interpretation de novo, *State v. Lickes*, 2020 WI App 59, ¶16, 394 Wis. 2d 161, 949 N.W.2d 623, *aff'd*, 2021 WI 60, 397 Wis. 2d 586, 960 N.W.2d 855, and we interpret statutes using the well-established methodology articulated in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110.  When reviewing statutory language, this court "ascertain[s] and appl[ies] the plain meaning of the statutes as adopted by the legislature."  *White v. City of Watertown*, 2019 WI 9, ¶10, 385 Wis. 2d 320, 922 N.W.2d 61.  "[S]tatutory interpretation 'begins with the language of the statute[,]'" and the "language is given its common, ordinary, and accepted meaning, except that technical or specially-defined words or phrases are given their technical or special definitional meaning."  *Kalal*, 271 Wis. 2d 633, ¶¶45-46 (citation omitted) ("Context is important to meaning.  So, too, is the structure of the statute in which the operative language appears.  Therefore, statutory language is interpreted in the context in which it is used; not in isolation but as part

of a whole; in relation to the language of surrounding or closely-related statutes; and reasonably, to avoid absurd or unreasonable results.").

¶7    "Taxation is the rule and exemption from taxation is the exception." *Trustees of Indiana Univ. v. Town of Rhine*, 170 Wis. 2d 293, 299, 488 N.W.2d 128 (Ct. App. 1992). "Tax exemption statutes are matters of legislative grace and are to be strictly construed against the granting of an exemption." *Id.* "The party claiming the exemption must show the property is clearly within the terms of the exception and any doubts are resolved in favor of taxability." *Id.*

¶8    The tax exemption statute at issue here, WIS. STAT. § 70.11(4d), as relevant, identifies the following as being exempt from taxation:

> BENEVOLENT RETIREMENT HOMES FOR THE AGED. Property that is owned by a nonprofit entity that is a benevolent association and *used as a retirement home for the aged*, but not exceeding 30 acres of land necessary for the location and convenience of buildings, while such property is not used for profit, if the fair market value of the individual dwelling unit, as determined by the assessor for the taxation district in which the property is located, is less than 130 percent of the average equalized value under [WIS. STAT. §] 70.57 of improved parcels of residential property located in the county in which the retirement home for the aged is located in the previous year, as determined by the assessor of the taxation district in which the property is located based on the sum of the average per parcel equalized value of residential land and the average per parcel equalized value of residential improvements, as determined by the department of revenue.

(Emphasis added.) To determine whether Pine Haven's duplexes qualify for the aforementioned tax exemption, we must construe the phrase "retirement home for the aged[.]"

¶9    While the tax exemption statute does not define the phrase "retirement home for the aged," our supreme court explained when construing WIS. STAT.

5

§ 70.11(4) (1963-64) in *Milwaukee Protestant Home for the Aged*, that "retirement homes for the aged" are "what the name implies, homes for retired persons, places of congregate living where retirees go to live, expecting to pay the fees charged and to receive the usual incidents of group home living." 41 Wis. 2d at 291. We are bound by that precedent. *See, e.g.*, *State v. McMahon*, 186 Wis. 2d 68, 92, 519 N.W.2d 621 (Ct. App. 1994) ("[A]s an error correcting court, we are bound by our supreme court case law.").

¶10 The Village contends the four duplexes do not fall under the definition of the term set forth in *Milwaukee Protestant Home for the Aged* for multiple reasons, including that: (1) they are independent units with their own ingress, egress, and garage; (2) Pine Haven does not provide any services to the duplex tenants at the duplex itself; and (3) if a duplex tenant wants to purchase a meal or attend or participate in an event at the nearby assisted living facility, the tenant is considered a visitor. The duplexes themselves also do not share any common areas: there is no common kitchen, living room, game room, exercise room, party room, hallway, or any other space for congregate or group living. And, as previously noted, when Pine Haven purchased the four duplexes, the existing tenants remained after signing new rental agreements with Pine Haven. These rental agreements do not identify the duplexes as a "retirement home" or "retirement home for the aged" but instead describe the intended "use" of the duplexes simply as being for "residential purposes[.]" The duplex rental agreements also state that Pine Haven will provide lawn care and snow removal but do not require any upfront registration fee or enroll the duplex tenants into a retirement home.

¶11 Pine Haven believes its duplexes do qualify "as a retirement home for the aged" because the duplex tenants have access to the common areas of its assisted living facility down the street and may pay to participate in meals and some

programming. In addition, Pine Haven explains that duplex tenants have "preferred placement" to move into one of Pine Haven's other facilities should that tenant eventually require greater support, services, or care.

¶12    In granting Pine Haven's motion for summary judgment, the circuit court erroneously disregarded *Milwaukee Protestant Home for the Aged* because it believed the supreme court's definition—set forth in 1969—was a "narrow and antiquated definition of a retirement home for [the] aged [that] does not take into consideration the current … practice of the continuum of care." Even assuming the court was correct in its belief that our supreme court's definition of "retirement home for the aged" is not an accurate reflection of the continuum of care that is more commonly found in today's retirement home settings and communities, we are not at liberty to disregard it in construing WIS. STAT. § 70.11(4d).

¶13    We also note, as does the Village, that when the legislature amended WIS. STAT. § 70.11 in 2009, it did not alter or change the supreme court's definition. *See* 2009 Wis. Act 28, § 1516h. This operates as an endorsement of the supreme court's definition. *See Zimmerman v. Wisconsin Elec. Power Co.*, 38 Wis. 2d 626, 633-34, 157 N.W.2d 648 (1968) ("Where a law passed by the legislature has been construed by the courts, legislative acquiescence in or refusal to pass a measure that would defeat the courts' construction is not an equivocal act."). Accordingly, until

the legislature or the supreme court alters it, this court and the circuit courts are bound to apply the aforementioned definition because it is the law.[5]

¶14    Based on the application of the supreme court's definition to the duplexes at issue here, we conclude that the duplexes do not qualify "as a retirement home for the aged" because they are not "places of congregate living where retirees go to live[.]" *See Milwaukee Protestant Home for the Aged*, 41 Wis. 2d at 291. Rather, the duplex tenants during the taxation time period at issue were individuals who had chosen to live there prior to Pine Haven having purchased the duplexes— a time when there is no question that they were not part of "a retirement home for the aged"—and then simply continued to do so thereafter. And, to the extent those tenants continued to reside in the duplexes after Pine Haven's purchase, there is no indication that their reason for doing so was in any way related to the amenities that Pine Haven otherwise offers or provides to its residents. Moreover, the duplexes have no "usual incidents of group home living," *see id.*, and although the tenants may now access and use Pine Haven's nearby facility for a fee, they are considered "visitors" when they do so. It is difficult to reconcile this characterization of someone who purportedly lives in "a retirement home for the aged" as a visitor if they are actually *a resident of* the "retirement home for the aged[.]"

---

[5] We do not decide this issue based solely on the statutory language, given the supreme court's 1969 description of "retirement homes for the aged" in *Milwaukee Protestant Home for the Aged v. City of Milwaukee*, 41 Wis. 2d 284, 164 N.W.2d 289 (1969). While Pine Haven contends the statement is dictum, as our supreme court has reminded us, we may not disregard a statement from a supreme court opinion as dictum. *See Zarder v. Humana Ins. Co.*, 2010 WI 35, ¶58, 324 Wis. 2d 325, 782 N.W.2d 682 ("We therefore conclude that to uphold the principles of predictability, certainty, and finality, the court of appeals may not dismiss a statement from an opinion by this court by concluding that it is dictum.").

## III. CONCLUSION

¶15 Based on the foregoing, we conclude that the duplexes do not meet the definition of "retirement home for the aged," and the circuit court therefore erred in granting summary judgment to Pine Haven. Because the WIS. STAT. § 70.11(4d) exemption does not apply, we reverse that judgment and remand to the circuit court with directions to grant judgment in the Village's favor.[6]

*By the Court.*—Judgment reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5.

---

[6] Pine Haven's reliance on the Wisconsin Property Assessment Manual is misplaced. The Manual controls only when it does not conflict with statutory or case law. *See **Walgreen Co. v. City of Madison***, 2008 WI 80, ¶3, 311 Wis. 2d 158, 752 N.W.2d 687. Further, the Manual's age-related discussion addresses discrimination in housing, which is not at issue here.